PROGRESSIVE CASUALTY
INSURANCE COMPANY,
Appellant,

v.

Sarah SKIN, Joe Skin, Eva Nageak,
Benjamin Nageak, and Bonnie
Nageak, Appellees.

No. S–12586.

Supreme Court of Alaska.

July 10, 2009.

Aisha Tinker Bray and Gary Zipkin, Guess & Rudd, P.C., Fairbanks, for Appellant.

Michele L. Power, Power & Brown, L.L.C., Bethel, for Appellees Sarah Skin and Joe Skin.

Dennis M. Mestas, Law Offices of Dennis Mestas, Anchorage, for Appellees Eva Nageak, Benjamin Nageak, and Bonnie Nageak.

Rebecca J. Hozubin, Wilkerson Hozubin, Anchorage, for Amicus Curiae Property Casualty Insurers Association of America.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Progressive Casualty Insurance Company appeals the superior court's ruling that it issued an ambiguous insurance policy and acted improperly in handling its insured's claim. Specifically, Progressive challenges the superior court's conclusions that (1) the Progressive policy failed to meet the requirements for a "personal motor vehicle liability" policy under AS 28.22.101(c); (2) the Progressive policy's definition of "vehicle" must be reformed to include liability coverage for the operation of non-owned all-terrain vehicles (ATVs); (3) the Progressive policy's definition of "insured person" for the purpose of

medical payments coverage, which relied on the common usage definition of "motor vehicle," was ambiguous and thus construed in favor of the insured; (4) Progressive waived its right to assert a defense based on the named driver exclusion in the policy; (5) Progressive is estopped from asserting a defense based on the named driver exclusion in the policy; and (6) Progressive breached its fiduciary duty to Sarah Skin, its insured, thus warranting coverage by estoppel for all of the parties' claims arising out of an accident involving Skin's minor son.

Because Progressive's policy meets the requirements for an "owner's motor vehicle liability" insurance policy under AS 28.22.101(a), and because the policy does not provide liability coverage for accidents arising out of the insured's operation of an ATV, we reverse the superior court's rulings to the contrary. We affirm, however, the superior court's decision to hold Progressive liable for medical payments coverage because that section of the Progressive policy employs the term "vehicle" in an ambiguous manner, requiring us to construe coverage in favor of the insured.

## II. FACTS AND PROCEEDINGS

On May 17, 2002, Sarah Skin purchased a motor vehicle insurance policy from Progressive to cover a Chevrolet Prizm automobile, which she intended to drive in Barrow.[1] A resident of Barrow, Skin bought the policy over the phone from an InsuranceMart agent in Anchorage. The agent faxed her insurance application forms with instructions to sign or initial her consent to various clauses, including a "Named Driver Exclusion" that listed her two sons, including then fifteen-year-old son Joseph Skin. Skin signed and initialed as instructed and sent the forms back.[2]

Less than a month later, on June 13, 2002, Joseph ran a stop sign at an intersection in Barrow while driving a four-wheel Honda ATV owned by Bonnie and Benjamin Nageak. The Nageaks' daughter, Eva Nageak, was riding as Joseph's passenger on the ATV. A pickup truck collided with them, seriously injuring both Joseph and Eva.[3] The Barrow police investigated the accident and assigned fault to Joseph.

Neither the Skins nor the Nageaks notified Progressive of the accident. The owner of the pickup truck, however, held a Progressive insurance policy, and he contacted Progressive on June 24, 2002, to report the accident. Based on that report, Progressive cross-referenced Skin's policy. A Progressive adjuster, Kelly Ford, telephoned Skin later that day to interview her and to acquire a recorded confirmation that Skin had excluded Joseph from her policy coverage.

On June 29, 2002, Progressive sent a letter to Skin notifying her of the company's determination that Joseph did not meet the requirements for medical coverage under her policy. The "Medical Payments Coverage" section of Skin's policy binds Progressive to provide coverage for "**bodily injury:**[4] 1. sustained by an **insured person;** 2. caused by **accident;** and 3. arising out of the ownership, maintenance or use of a motor vehicle." The section goes on to define "insured person" as:

a. **you** while **occupying** any **vehicle** or **rental vehicle,** other than a **vehicle owned** by **you** which is not a **covered vehicle;**

b. a **relative** while **occupying** a **covered vehicle** or **non-owned vehicle;**

---

1. The policy contained $50,000/$100,000 limits for liability coverage, $50,000/$100,000 limits for uninsured motorist/underinsured motorist (UM/UIM) bodily injury coverage, a limit of $25,000 for UM/UIM property damage coverage, and comprehensive and collision coverage for the Chevrolet Prizm, although Skin later decided not to purchase the Prizm.

2. In response to the question whether she had disclosed "all the residents of your household," Skin marked both the "Yes" and "No" boxes. At some point later, an InsuranceMart agent made a note on the page indicating that Skin, whose first language is Inupiaq, had not understood the question.

3. Eva's injuries include a "permanently crippled, painful and unsightly leg." Joseph's injuries, although temporary, caused him to incur over $17,000 in medical expenses.

4. As explained further below, Progressive assigns distinct definitions to contractual terms in bold versus plain typeface.

c. **you** or any **relative** when struck by a motor vehicle or trailer while not **occupying** a motor vehicle; and

d. **any** other person while **occupying** a **covered vehicle.**

Progressive's letter to Skin explains that because "the ATV is not a private passenger, pickup or sedan, it would not be considered a vehicle."[5] As a result, Joseph did not qualify as an "insured person," defined by "sub-definition b" of the policy as "a **relative** while **occupying** a **covered vehicle** or **non-owned vehicle.**" At the same time, Joseph failed to qualify under "sub-definition c" as a "**relative** when struck by a motor vehicle or trailer while not **occupying** a motor vehicle." According to the letter, "[w]hile the policy does not define a motor vehicle, Alaska Statute 28.40.100 defines a motor vehicle as self propelled except a vehicle moved by human or animal power." Therefore, the letter concludes, even though Joseph was not occupying a "vehicle" as defined in the policy, "Joseph Skin was occupying a motor vehicle," and therefore "he would not have been deemed an **insured person** under sub-definition 'c'" of the "Medical Payments Coverage" section of the policy.

Four days later, on July 3, 2002, Progressive sent another letter denying third-party liability coverage for the accident. "Part I" of Skin's policy, entitled "Liability to Others," explains that Progressive "will pay damages, other than punitive or exemplary damages, for **bodily injury** for which an **insured person** becomes legally responsible because of an **accident** arising out of ownership, maintenance, or use of a **vehicle** or a **rental vehicle.**" Within the "Additional Definitions" of Part I, Progressive defines "non-owned vehicle," as "any **vehicle,** and any **rental vehicle,** that is not **owned** by **you,** a **relative,** or the named insured's non-resident spouse." Progressive's July letter notified Skin that "there is no coverage for **Bodily Injury or Property Damage** for the use of the ATV being operated by Joseph Skin." The company once again explained that the ATV did not meet the definition of "vehicle" under the policy.

On August 9, 2002, the Nageaks' attorney contacted Progressive, and the company sent the attorney a copy of the letter shortly thereafter. No further communication between Progressive and the parties took place until this litigation began.

On October 21, 2003, Bonnie, Benjamin, and Eva Nageak brought suit against Joseph for damages arising out of the accident. They did not notify Progressive of the suit. Acting on behalf of her minor son, Skin entered into a settlement with the Nageaks, assigning to them the proceeds of her claims against Progressive and agreeing to jointly prosecute those claims. On October 8, 2004, at the parties' request, Superior Court Judge Michael I. Jeffery entered a consent judgment against Joseph in favor of the Nageaks for a total amount of $1,582,632.

On January 3, 2005, Skin and her assignees, the Nageaks, jointly filed an action against Progressive and the individual adjusters assigned to the claim. Their complaint alleged that the Progressive agents "conspired and engaged in a wrongful and bad faith scheme" that "culminated in the wrongful denial of the Progressive policy's liability coverage, denial of defense, and denial of medical payments coverage to Joe Skin." Progressive filed its answer to the complaint on April 26, 2005. At about the same time, on April 29, 2005, Progressive sent Skin a "followup" to its earlier "Medical Payments Coverage denial," explaining that "[i]f the ATV involved in this accident is determined to be a 'vehicle,' then that determination would trigger the Named Driver Exclusion Election pertaining to Joseph Skin, which was in effect at the time of the

---

**5.** The "General Definitions" section of the policy explains:

"**Vehicle**" means a land motor vehicle:

a. of the private passenger, pickup body, or sedan delivery type;

b. designed for operation principally upon public roads;

c. with at least four (4) wheels; and

d. with a gross vehicle weight of 10,000 pounds or less; which is not a **rental vehicle.**

loss."[6] Progressive sent a similarly worded letter on May 3, 2005 to explain the company's "alternative basis for denial of Bodily Injury and Property Damage coverage."

On September 26, 2005, Progressive filed two motions for partial summary judgment on the Nageaks' third-party liability coverage claims and Skin's medical payments coverage claim, respectively. The Nageaks and Skin filed oppositions and cross-motions for summary judgment. Superior Court Judge Richard H. Erlich consolidated the motions for decision.

On November 28, 2006, the superior court issued its decision, ruling against Progressive on all of the issues before it. The court determined that Skin had purchased a "personal motor vehicle policy," as defined by AS 28.22.101(c), and that such a policy required "non-owned vehicle" coverage. The Progressive definition of "non-owned vehicle" in Skin's policy did not meet the minimum coverage mandated by the statute, according to the superior court, because "only the broad statutory definition of 'motor vehicles' will meet the legislative intent to close gaps in motor vehicle liability coverage." The superior court reasoned that "[a]n insured who does not desire liability coverage for non-owned vehicles [including ATVs] may purchase an 'owner's policy' to provide liability coverage for designated vehicles." The purchaser of a "personal motor vehicle liability policy," by contrast, "bargains for the greater coverage." Consistent with this theory, the superior court undertook a reformation of Progressive's definition of "non-owned vehicle," substituting the term "motor vehicle" as defined by the statute, and thus qualifying Joseph as an "insured person."

The superior court went on to find that the Nageaks had properly asserted their claims for breach of contract based on Progressive's denial of third-party liability coverage. Similarly, the court held that Joseph qualified for medical payments coverage under the policy, "subject to applicability of the named driver exclusion defense." The superior court proceeded to determine that Progressive had waived the named driver exclusion defense because it initially relied on the policy's definition of "vehicle" alone as the grounds for denying coverage for the accident. In addition to waiver, the superior court held that because the "plaintiffs reasonably relied on Progressive's sole defense to coverage and were prejudiced as a result.... Progressive is estopped from asserting the [named driver exclusion] defense."

Finally, relying on *Lloyd's & Institute of London Underwriting Cos. v. Fulton,*[7] the superior court imposed coverage by estoppel based on Progressive's breach of its fiduciary duties to Skin. Noting that a Progressive agent initially called Skin to ask her to confirm that she had requested the named driver exclusion for Joseph, the court cited the transcript of that conversation as evidence of "misconduct by Progressive." The court also held that Progressive's "failure to give timely notice of its intent to reserve its right to assert the [named driver exclusion] defense" also violated the company's fiduciary duty to Skin.

Progressive filed a motion for reconsideration on December 8, 2006. Among other arguments, the company advanced the contention that the superior court failed to give deference to the Division of Insurance's approval of its policy. In its order denying Progressive's motion, the superior court noted that Progressive declined to heed the Division's express recommendation that it revise "confusing and potentially misleading" language in its policy. On January 8, 2007, the superior court entered final judgment pursuant to Alaska Civil Rule 54(b). Progressive appeals.

---

6. The named driver exclusion in the Progressive policy states:

> If **you** have asked **us** to exclude any person from coverage under this Policy, then **we** will not provide coverage for any claim arising from an **accident** or **loss** involving a **vehicle** or **rental vehicle** being operated by the excluded person. THIS INCLUDES DAMAGES MADE AGAINST **YOU**, A **RELATIVE**, OR ANY OTHER PERSON OR ORGANIZATION THAT IS VICARIOUSLY LIABLE FOR AN **ACCIDENT** ARISING OUT OF THE OPERATION OF A **VEHICLE** BY THE EXCLUDED DRIVER.

7. 2 P.3d 1199 (Alaska 2000).

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo and will uphold the lower court's ruling if the record presents no genuine issues of material fact and the movant is entitled to judgment as a matter of law.[8] We draw all reasonable inferences of fact against the moving party.[9]

## IV. DISCUSSION

### A. The Progressive Policy Meets Minimum Statutory Requirements.

Alaska Statute 28.22.311 defines a "motor vehicle liability policy" as "an owner's policy, an operator's policy, or a personal policy that . . . meets the requirements of AS 28.22.101." According to AS 28.22.101(a), an owner's policy "must designate . . . the motor vehicles that it covers and insure the person named against loss" arising out of "the ownership, maintenance, or use of a designated motor vehicle." By comparison, a personal motor vehicle liability policy offers broader coverage, insuring "the person named as insured against loss" arising out of "the ownership, maintenance, or use by the named person of a motor vehicle whether owned or not owned by the person."[10] The superior court found that Progressive issued a "personal" motor vehicle liability policy. Progressive argues that it issued an "owner's" policy and that offering limited additional coverage should not bind it to the statutory requirements for a "personal" policy. We agree with Progressive's interpretation of the statute.

It was error to conclude that Progressive had to insert "explicit language" in the policy "identifying it as an 'owner's' policy." The superior court's holding relied on findings that the Progressive policy "expressly provides non-owned vehicle coverage" and that the title of the "Personal Auto Policy Declarations Page" signed by Skin "does not identify the policy as an 'owner's policy' or an 'operator's policy.'" As a result, the superior court concluded, the policy had to meet the requirements of "a personal motor vehicle policy as described in AS 28.22.101(c)." But nothing in the statutes or our case law requires an insurer to explicitly label a motor vehicle liability policy as either an "owner's" policy or a "personal" policy.

Moreover, the policy declarations page signed by Skin hardly implicates the broad coverage that the superior court read a "personal" policy to require. First, the declarations page specifies the make, model, and VIN number of the Chevrolet Prizm that Skin planned to purchase. In other words, it "designate[s] . . . the motor vehicle[ ] that it covers,"[11] as an owner's policy must do. Moreover, the declarations page contains a box labeled "Personal Auto Liability," which lists categories of "automobile liability" coverage, including coverage for "any auto," "scheduled autos," and "non-owned autos." Skin's policy declarations page indicates that she purchased coverage only for "scheduled autos." A purchaser of a "personal" policy, however, would presumably expect to see a checkmark by the "any auto" or "non-owned autos" box as well, since under AS 28.22.101(c) "personal" policy coverage extends to "a motor vehicle whether owned or not owned by the person."

The Nageaks argue that by offering some non-owned vehicle coverage, Progressive committed itself to meet the statutory requirements of a "personal" motor vehicle liability policy. But they marshal little support for this proposition. In contrast, Progressive points out that we have characterized, in dicta, an identical Progressive policy as an "owner's" policy.[12] And Progressive cites persuasive precedent from the Idaho Supreme Court, upholding the validity of the

---

8. *Newton v. Magill,* 872 P.2d 1213, 1215 (Alaska 1994).

9. *Id.*

10. AS 28.22.101(c).

11. AS 28.22.101(a).

12. *Nelson v. Progressive Cas. Ins. Co.,* 162 P.3d 1228, 1235–36 (Alaska 2007) (upholding the named driver exclusion term within a similar Progressive insurance policy as a valid exception to the requirements for an owner's policy under AS 28.22.101(a)).

Progressive insurance policy and rejecting an argument similar to the Nageaks'.[13]

The Nageaks argue that a legislative intent to close gaps in insurance coverage supports their claim. They leave us unconvinced, however, that the legislature intended to cabin insurance policy coverage into narrow statutorily defined categories unless explicitly labeled otherwise. The plain language of AS 28.22.311 makes clear that the Progressive policy need only meet the requirements of an owner's policy under AS 28.22.101(a). We therefore turn to the question of whether the policy, by its own terms, provides coverage for Joseph's accident.

**B. The Progressive Policy Reasonably and Unambiguously Excludes Liability Coverage for Accidents Arising Out of the Operation of ATVs.**

■ The Nageaks argue that regardless of how we characterize it, the Progressive policy covers the operation of an ATV by an insured. They reason that the Progressive policy's coverage for "non-owned vehicles" extends to ATVs because the policy's liability coverage section defines "non-owned vehicle" as "any **vehicle** ... that is not **owned** by **you**." They further contend that "vehicle" must include ATVs because AS 28.90.990(15) defines "motor vehicle" as "a vehicle which is self-propelled except a vehicle moved by human or animal power," and AS 28.90.990(28) defines "vehicle" even more broadly as "a device in, upon, or by which a person or property may be transported." For its part, Progressive maintains that the definition of "vehicle" at the outset of the Progressive policy, contained in the "General Definitions" section, excludes coverage for ATVs.

The doctrine of reasonable expectations guides our review of the terms of an insur-

ance policy.[14] In applying that doctrine, we held in *Hillman v. Nationwide Mutual Fire Insurance Co.* that an insurance policy's "definitional section is distinct from the coverage provisions, and cannot logically be read as providing any substantive additions to the coverage section."[15] Progressive's definition of "vehicle" in its policy's "General Definitions" section effectively provides a substantive limitation to its policy's liability coverage section. The Nageaks therefore argue that just as the definitional section cannot add substantive protections, it cannot delete them.[16]

The substantive provision for third-party liability coverage in the Progressive policy appears as follows:

*Part I—Liability to Others*

Insuring Agreement—Bodily Injury

Subject to the Limits of Liability, if **you** pay a premium for **bodily injury** liability coverage, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury** for which an **insured person** becomes legally responsible because of an **accident** arising out of the ownership, maintenance, or use of a **vehicle** or a **rental vehicle.**

The "Additional Definitions" subsection in Part I goes on to define "insured person" as, among other things, "a **relative** with respect to an **accident** arising out of the maintenance or use of a **non-owned vehicle** with the express or implied permission of the **owner** of the **non-owned vehicle**." Also within the same "Additional Definitions" subsection, the policy clarifies that " 'non-owned vehicle' means any **vehicle** and any **rental vehicle,** that is not **owned** by **you,** a **relative,** or the named insured's non-resident spouse."

13. *See Purvis v. Progressive Cas. Ins. Co.,* 142 Idaho 213, 127 P.3d 116, 120 (2005) ("That the policy does not state whether it is an operator's policy or an owner's policy, provides both owner's and operator's coverage, and states it has 'some non-standard restrictions' simply does not show the policy is ambiguous.").

14. *Allstate Ins. Co. v. Teel,* 100 P.3d 2, 4 (Alaska 2004).

15. 758 P.2d 1248, 1250 (Alaska 1988).

16. The Division of Insurance appears to have endorsed this theory as well. In a 1999 letter to Progressive, the Division cited *Hillman* for the proposition that the definitional section cannot add substantive coverage and explained that "[l]ikewise, substantive exclusions should be found in the exclusions section, not in definitional provisions." The letter strongly recommended that "all exceptions to the definition of Uninsured/Underinsured Motor Vehicle must be modified or deleted."

Finally, the "General Definitions" section of the policy, number 12, explains:

"**Vehicle**" means a land motor vehicle:

 a. of the private passenger, pickup body, or sedan delivery type;

 b. designed for operation principally upon public roads;

 c. with at least four (4) wheels; and

 d. with a gross vehicle weight of 10,000 pounds or less;

which is not a **rental vehicle**.

As Progressive explained in its initial correspondence with Skin, the ATV involved in Joseph's accident did not meet the first two criteria of the "vehicle" definition: it was neither "a land motor vehicle ... of the private passenger, pickup body, or sedan delivery type," nor "a land motor vehicle ... designed for operation principally upon public roads." Consequently, the ATV did not qualify as a "non-owned vehicle," and Joseph did not qualify as an "insured person" because he was not operating a "non-owned vehicle." Progressive therefore denied coverage.

The Nageaks argue that Progressive cannot rely on its policy's "distinct and separate" "General Definitions" section to limit the scope of coverage. They argue that the statutory definition of "vehicle" should apply within the Progressive policy's liability coverage section. According to the Nageaks, *Hillman* relieves the insured of any obligation to cross-reference the "General Definitions" section when reading the "non-owned vehicle" definition.

In *Hillman*, however, we rejected an appeal for coverage based on a definition that we determined could not "logically be read as providing any substantive additions to the coverage section of the policy."[17] Here, Progressive relies on the "general definition" of "vehicle" set out at the beginning of its policy. That section explains that "[e]xcept as otherwise defined in this policy, terms appearing in boldface will have the following

meaning." And the term "vehicle" appears in boldface within the liability coverage section's "non-owned vehicle" definition.

 That boldfaced "vehicle" definition unambiguously excludes ATVs. The Nageaks do not argue that ATVs are "of the private passenger, pickup body, or sedan delivery type." Nor do they claim that the ATV was "designed for operation principally upon public roads."[18] The superior court took "judicial notice" that "lay persons in Barrow regularly see snowmobiles and ATVs driven upon the public roads." And the Nageaks defend the trial court's reasoning by pointing to Alaska Administrative Code provisions and Barrow Municipal Ordinances that apparently permit non-licensed drivers to operate ATVs in the streets of Barrow.[19] But an insurance coverage rule that turns so readily on the conditions and ordinances particular to the insured's place of residence would inject uncertainty into a policy's scope of coverage. Progressive's definition of "vehicle" meets the objectively reasonable expectations of consumers across Alaska. The local ordinances and regulations cited by the Nageaks do not entitle consumers in some parts of Alaska to more insurance coverage.

The Nageaks further argue that the Progressive policy is confusing and ambiguous because a definition of "vehicle" cannot be found in the policy's liability coverage section. Therefore, they maintain, an insured has a reasonable expectation of coverage for all non-owned vehicles that meet the statutory definition of "motor vehicle." But adopting this argument would lead us to recognize a Progressive insured's reasonable expectation of coverage for liability incurred while driving non-owned scooters, golf carts, forklifts, tugs, and any other "vehicle which is self-propelled except a vehicle moved by human or animal power."[20] The Progressive policy does not support such an expectation of coverage. At its outset, the policy defines the term "vehicle," and an insured may fairly

---

17. 758 P.2d at 1250.

18. The Certificate of Origin for the Nageaks' ATV warns that the vehicle "was not manufactured for use on public streets, roads or highways."

19. As the Nageaks point out, operating a golf cart on public streets without a license is also legal in Barrow.

20. AS 28.90.990(16).

apply that definition throughout the policy, including the liability coverage section.

We therefore conclude that because the Nageaks' ATV fails to qualify as a covered "vehicle," third-party liability coverage was not available to Skin.[21] In light of this holding, we need not determine whether Joseph was legally excluded as a covered driver under the policy.

## C. The Superior Court Correctly Construed the "Medical Payments Coverage" Section of the Progressive Policy To Provide Coverage for Joseph's Accident.

The "Medical Payments Coverage" section of the Progressive policy covers expenses associated with the bodily injury of an "insured person." This part of the policy defines "insured person" as including "a **relative** while **occupying** a covered vehicle or non-owned vehicle," as well as "**you** or any relative when struck by a motor vehicle or trailer while not **occupying** a motor vehicle." (Boldface type in original; underlined emphasis added.) Thus, as a relative, Joseph's claim for medical payments coverage proceeds under two discrete theories. Under the first theory, he claims that he is covered as a "**relative** while **occupying** a ... non-owned vehicle." But our previous holding makes clear that the Nageaks' ATV does not qualify as a "vehicle" under the policy.[22] The second theory applies if the Nageaks' ATV does not qualify as a "vehicle." Under this theory, the policy would cover Joseph as a "**relative** when struck by a motor vehicle or trailer while not **occupying** a motor vehicle."

Progressive denied medical payments coverage for Joseph under this theory on the basis of a distinction between the term "vehicle," which is set out in boldface type in the policy, and the term "motor vehicle." We

agree with Progressive that Joseph was not occupying a "vehicle" at the time of the accident. But Progressive also takes the position that Joseph cannot recover under the second theory that the accident occurred while Joseph was "not occupying a motor vehicle." According to Progressive, although the Nageaks' ATV does not qualify as a "vehicle," it does qualify as a "motor vehicle." Therefore, according to Progressive, Joseph was "occupying a motor vehicle," even though he was not occupying a "vehicle."

Progressive argues that because the policy does not define the term "motor vehicle" for purposes of medical payments coverage, an insured must rely on the common usage meaning of the term. The company contends that an objectively reasonable lay person should understand that an ATV qualifies as a "motor vehicle" but not as a "vehicle." We cannot agree with Progressive's tortured reading of its policy.

The "General Definitions" section of the Progressive policy explains that "[e]xcept as otherwise defined in this policy, terms appearing in boldface will have the following meaning[.]" The policy fails to mention that the same terms, when not appearing in boldface, will depart from those meanings. In the superior court's words, "**vehicle** must be read as 'vehicle in boldface' to convey the policy meaning rather than the ordinary meaning as understood by lay persons." The court noted that "there are at least 56 instances of 'vehicle' or 'motor vehicle'—nonboldface throughout Mrs. Skin's policy" and concluded that "a reasonable insured may question whether the appearance of 'vehicle,' non-boldface, is intentional or a typographical error."

We agree with the superior court that the distinction between the terms "motor vehi-

---

21. In addition to the unambiguous terms of the Progressive policy, we are further persuaded by the Department of Motor Vehicles' exclusion of ATVs and other recreational vehicles from Alaska's mandatory automobile insurance laws.

22. Had we determined that the ATV qualified as a "vehicle" under the policy, the named driver exclusion in the Progressive policy might have barred Joseph's ability to recover medical pay benefits under this theory of coverage. But the

exclusion only applies to "**accident** or **loss** involving a **vehicle** or **rental vehicle** being operated by the excluded person." Because the ATV was neither a "vehicle" nor a "rental vehicle" for the purposes of the policy, Joseph does not qualify as a "driver" for the purposes of the exclusion. The policy thus affords him the same coverage for medical payments arising out of this accident as it would if he had been struck while walking across the street.

cle" and "vehicle" would be difficult for a policyholder to understand. A reasonable lay-person could not be expected to understand that he could simultaneously be denied coverage under one policy provision because he *was not* occupying a **"vehicle"** while also being denied coverage under another provision because he *was* occupying a "vehicle." Accordingly, we hold that this ambiguous policy language entitles Skin to attach the policy definition of "vehicle" to that term wherever it appears in the policy, regardless of its typeface or whether the word "motor" precedes it. Because that definition excludes ATVs, we hold that Progressive must extend medical payments coverage under the policy to Joseph.

We are not alone in arriving at the conclusion that Progressive's practice of attaching two definitions to the same policy term is obscure at best. The Court of Appeals of Washington has similarly determined that Progressive clouds its policy with ambiguity by employing multiple definitions for the term "vehicle." [23] In *Getz v. Progressive Specialty Insurance Co.*, a longshoreman sued Progressive for UIM coverage after an underinsured, unauthorized driver on the dock collided with him as he operated a piece of equipment known as a "hustler." [24] Progressive declared that the hustler fell within the statutory definition of motor vehicle and therefore denied Getz's claim under the terms of its UIM coverage. [25] But Getz's policy, like Skin's, defined "vehicle" narrowly, although it used capital letters rather than boldface type to denote that meaning. [26] The Washington Court of Appeals held in favor of Getz, reasoning that "Progressive's effort to avoid the consequences of its own definition fails." [27]

A New York court has similarly held that Progressive's definition of "vehicle" should carry over through the rest of its policy, but its holding operated to exclude coverage. [28] *In re Progressive Insurance Cos. (Nemitz)* involved a Progressive customer who sought UIM payments for injuries that she suffered while riding as a passenger on an uninsured ATV. [29] The policy in *Nemitz* employed a definition of "vehicle" nearly identical to that of Skin's. [30] And like Skin's policy, it defined "uninsured motor vehicle" as a "motor vehicle that, through its ownership, maintenance or use, results in bodily injury to the insured." [31] The brief opinion of the New York Supreme Court omits any mention of boldface type. The court nonetheless held that "the definition of an 'uninsured motor vehicle' in the [UIM] section of the policy [ ] references the phrase 'motor vehicle,' which, as we previously noted, is already unambiguously defined in the policy in a manner that excludes ATVs." [32] The New York court apparently saw no reason to distinguish between the specific wording of the UIM provision's reference to "motor vehicle" and the general definitions section's reference to "vehicle." [33]

These cases further persuade us that Progressive's position relies on an ambiguous and confusing convention that varies material terms of Progressive's policy depending on the typeface. Progressive maintains that it intentionally makes use of this convention "to deliberately provide additional coverage to the policy holder." [34] But the typeface con-

23. *Getz v. Progressive Specialty Ins. Co.*, 106 Wash.App. 184, 22 P.3d 835, 837–39 (2001).

24. *Id.* at 836.

25. *Id.* at 837.

26. *Id.* at 837–38.

27. *Id.* at 839. In support of its holding, the *Getz* court noted that "nothing in the policy signals that the presence or absence of capital letters has any significance at all." *Id.* at 838.

28. *In re Progressive Ins. Cos. (Nemitz)*, 39 A.D.3d 1121, 834 N.Y.S.2d 394, 396 (2007).

29. *Id.* at 395.

30. *Compare id.* at 396, *with supra* note 5.

31. *Id.* at 396.

32. *Id.*

33. *See id.*

34. Progressive has convinced at least one court of this argument. *See Progressive Express Ins. Co. v. Boyce*, 821 So.2d 445, 446 (Fla.Dist.App. 2002) (holding that insured's motorcycle qualified as a "motor vehicle" because "[t]he word 'vehicle' in the 'owned but uninsured' exclusion

vention in Skin's policy has operated only to deny her coverage. And despite what Progressive may have intended, its policy lends itself to competing interpretations. We conclude that a reasonable insured is entitled to rely on Progressive's policy-defined terms, including the term "vehicle," to carry a uniform meaning throughout the policy, regardless of typeface.[35] We therefore affirm the superior court on the issue of medical payments coverage.

### D. Coverage by Estoppel Does Not Apply.

■ The superior court, citing *Lloyd's & Institute of London Underwriting Cos. v. Fulton*,[36] found that Progressive had breached its fiduciary duty to Skin and that this misconduct warranted coverage by estoppel. Specifically, the court found that Progressive acted improperly when its agent called Skin and sought to confirm that she had named Joseph as an excluded driver from her policy. The court identified other acts of misconduct as well, all of which concerned Progressive's alternative defense based on the named driver exclusion election in Skin's policy.

■ Given its alleged misconduct in attempting to establish the named driver exclusion defense, Progressive may indeed be estopped from denying coverage based on that defense or any other defense related to the misconduct. But in this case coverage was denied not because of the named driver exclusion that was the subject of Progressive's alleged misconduct, but instead because of the unrelated policy definition of "vehicle."

The Progressive policy does not provide liability coverage for Joseph's accident because an ATV does not qualify as a "vehicle" under the policy. This coverage limitation has nothing to do with the named driver exclusion or Progressive's alleged impropriety in attempting to confirm that exclusion.[37] We therefore reverse the superior court's decision to impose coverage by estoppel.[38]

### V. CONCLUSION

For the reasons detailed above, we REVERSE the judgment of the superior court that Progressive's insurance policy failed to meet minimum statutory requirements, that the policy's liability coverage extends to all-terrain vehicles, and that Progressive's misconduct warranted coverage by estoppel. Because we reverse on these issues, we conclude that the superior court's decision to impose coverage by estoppel must also be REVERSED. We AFFIRM the superior court's decision that Joseph is entitled to medical payments coverage.

WINFREE, Justice, with whom MATTHEWS, Justice, joins, dissenting in part.

WINFREE, Justice, with whom MATTHEWS, Justice, joins, dissenting in part.

I respectfully disagree with the court's conclusion that Joseph Skin is entitled to medical-payments (med-pay) coverage under his mother's policy. In my view this conclusion is inconsistent and incompatible with our

is not boldfaced, and thus, [the earlier policy] definition would not apply").

**35.** The dissent suggests that this court's holding could operate to shrink the scope of coverage in some situations. Dissent at 1109–10. But our holding is based on the ambiguity of the policy's language, and such ambiguities must always be construed in favor of the insured, not the insurer. *West v. Umialik Ins. Co.*, 8 P.3d 1135, 1138 (Alaska 2000) ("It is a settled principle that ambiguities in an insurance policy are construed in favor of the insured.").

**36.** 2 P.3d 1199 (Alaska 2000).

**37.** As we observed in our discussion of medical payments coverage, the named driver exclusion

only applies to "**accident** or **loss** involving a **vehicle** or **rental vehicle** being operated by the excluded person."

**38.** In *Fulton* we expressed our desire to discourage overreaching by insurers. While this is indeed an important consideration, we also recognize that coverage by estoppel is an extreme remedy. We thus limit our *Fulton* holding by concluding that coverage by estoppel, the usual remedy for breaches of the insurer's duty to defend, does not apply where an insurer has violated only its duty of disclosure with regard to a coverage defense that is unrelated to the coverage defense that forms the basis for the insurer's ultimate denial of coverage.

decision that Joseph Skin is not entitled to liability coverage under the policy.

Fundamental to our decision that Joseph Skin had no liability coverage while operating the Nageaks' ATV is the special definition of "vehicle" in the policy's "General Definitions" section:

"Vehicle" means a land motor vehicle:

a. of the private passenger, pickup body, or sedan delivery type;

b. designed for operation principally upon public roads;

c. with at least four (4) wheels; and

d. with a gross vehicle weight of 10,000 pounds or less;

which is not a **rental vehicle**.[1]

Its very obviousness makes it easy to overlook, but to understand the specially defined term "**vehicle**"—in boldface—one must understand the undefined but easily understood general terms "vehicle" and "motor vehicle." Otherwise it would be impossible to appreciate the difference between a "**vehicle**" and just another "motor vehicle" or, for specific example, to appreciate that "gross vehicle weight" can be the distinguishing factor between a "**vehicle**" and just another "motor vehicle."

To determine whether a vehicle is a "**vehicle**" under the policy, one must start with the larger set of vehicles called "land motor vehicle[s]" and then use the four limiting provisions of (a)-(d) to arrive at the specific subset of vehicles contemplated by the policy. The term "land motor vehicle" is not defined in the policy and therefore must be "construed in accordance with ordinary and customary usage."[2] The "land" portion of the term is self-evident. The common definition of "motor vehicle" is broad enough to cover any

"automotive vehicle not operated on rails."[3] This is consistent with relevant statutory definitions in Title 28 of the Alaska Statutes ("Motor Vehicles"): AS 28.90.990(a)(29) defines "vehicle" as a "device" for transporting people or property, and AS 28.90.990(a)(16) defines "motor vehicle" as "a vehicle which is self-propelled."

We had no difficulty understanding the policy definition of "**vehicle**" or differentiating between a "**vehicle**" and other examples of "motor vehicle" when concluding that Joseph Skin had no liability coverage while operating the Nageaks' ATV. We stated that: (1) the "boldfaced 'vehicle' definition [in the General Definitions section] unambiguously excludes ATVs"; (2) the policy "definition of 'vehicle' meets the objectively reasonable expectations of consumers"; (3) to conclude otherwise would create "coverage for liability incurred while driving non-owned scooters, golf carts, fork-lifts, tugs, and any other [motor vehicle]"; and (4) an insured may "fairly apply" the policy definition of "**vehicle**" throughout the policy. In short, we concluded that the Nageaks' ATV is a (land) "motor vehicle" but not a "**vehicle**" or, more specifically, not a "**non-owned vehicle**" as defined by the policy, and that this conclusion is within a consumer's reasonable expectations.[4]

But when the court considers med-pay coverage under the policy, it makes an about-face and concludes that "the term 'vehicle' [is used] in an ambiguous manner" in the med-pay coverage section and "the distinction between the terms 'motor vehicle' and 'vehicle' would be difficult for a policyholder to understand." The court describes as "tortured" Progressive's argument that a reasonable layperson should understand that an ATV

1. Progressive assigns distinct definitions to contractual terms in bold versus plain typeface. In the "General Definitions" section, where the definition of "vehicle" is located, the policy states: "Except as otherwise defined in this policy, terms appearing in boldface will have the following meaning:...."

2. *Allstate Ins. Co. v. Falgoust*, 160 P.3d 134, 139 (Alaska 2007).

3. Webster's Third New International Dictionary 1476 (2002).

4. The Nageaks and Skins clearly understand the distinction between a "vehicle" and a "motor vehicle." Their argument for liability coverage for Joseph Skin was that the common meaning and usage of "motor vehicle" should replace the term "vehicle" in the policy definition of "non-owned vehicle" so that the Nageaks' ATV would be included in liability coverage as a "non-owned vehicle." We rejected that argument.

qualifies as a "motor vehicle" but not as a "**vehicle**," although we concluded that very thing with respect to liability coverage.

Relevant policy provisions from Mrs. Skin's med-pay coverage are as follows:

### PART II—MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

[We will pay medical expenses for injuries]:

1. sustained by an **insured person**;
2. caused by **accident**; and
3. arising out of the ownership, maintenance or use of a motor vehicle.

. . . .

### ADDITIONAL DEFINITIONS

When used in this Part II:

1. "**Insured person**" and "**insured persons**" mean:

 a. **you** while **occupying** any **vehicle** or **rental vehicle**, other than a **vehicle** owned by **you** which is not a **covered vehicle**;

 b. a **relative** while **occupying** a **covered vehicle** or **non-owned vehicle**;

 c. **you** or any **relative** when struck by a motor vehicle or trailer while not **occupying** a motor vehicle; and

 d. **any** other person while **occupying** a **covered vehicle.**

The court ignores the general grant of coverage for medical expenses "arising out of the . . . use of a motor vehicle" and focuses only on whether Joseph Skin is an "**insured person**" for the coverage.

Provision (c) of the "**insured person**" definition is at issue here, but it is important to consider all of the provisions as a whole and place provision (c) in proper context. First and foremost, provisions (a), (b), and (d) combine to provide med-pay coverage to anyone who occupies Mrs. Skin's car, *i.e.,* the "**covered vehicle**." Provision (b) also extends med-pay coverage to Mrs. Skin and her family members while they occupy any "**nonowned vehicle**." It is thus clear that Joseph was an insured for med-pay coverage under Mrs. Skin's policy anytime he was occupying any "**vehicle**"—there is no "**vehicle**" for which Joseph would not be a med-pay insured.[5]

This leads to provision (c), which adds a very different dimension of med-pay coverage to Mrs. Skin's family members. Provision (c) extends med-pay coverage to Mrs. Skin's family members only when they (1) are struck by *any kind of motor vehicle* and (2) are not occupying *any kind of motor vehicle*. This is pedestrian coverage, and although the common situation invoking this coverage would be a pedestrian struck by a car, under the policy it also would apply for pedestrians struck, for example, by ATVs and "scooters, golf carts, fork-lifts, tugs, and any other [motor vehicle]." But it would not apply for persons injured while occupying ATVs or "scooters, golf carts, fork-lifts, tugs, and any other [motor vehicle]," *i.e.,* for non-pedestrians.[6]

Other courts have applied similar pedestrian coverage provisions. In *State Farm Mutual Automobile Insurance Co. v. Green,*[7] for example, Green was injured in a collision between his motorcycle and another vehicle and sought med-pay coverage under policies insuring his truck and automobile.[8] The policies provided med-pay coverage to Green if he were "struck by a highway vehicle while not occupying a land motor vehicle."[9] Green argued that although he was occupying his motorcycle at the time of the accident, "his motorcycle was not a 'land motor vehicle'

---

5. The superior court found med-pay coverage for Joseph under provision (b), but the court correctly concludes that Joseph could not be an insured for coverage under (b) because the ATV is not a "**vehicle**" as defined by the policy. The court could not reach this conclusion without expressly acknowledging that the ATV is a "motor vehicle" but not a "**vehicle**."

6. Med-pay coverage is not required by Alaska's mandatory insurance laws. *See* AS 28.22.101.

Progressive is entitled to provide, and to limit, med-pay coverage as it chooses. *See* AS 28.22.121.

7. 474 N.E.2d 1037 (Ind.App.1985).

8. *Id.* at 1037–38.

9. *Id.* at 1038.

within the meaning of the policy language."[10] The Indiana Court of Appeals made short work of this argument: "[W]e do not believe any reasonable person could honestly conclude that a motorcycle is not a 'land motor vehicle' within the plain, ordinary meaning of that term.... [The] phrase is not a term of art; nor is it automatically ambiguous simply because it is not defined within the policy."[11]

In *Colwell v. State Farm Mutual Automobile Insurance Co.*,[12] Colwell was driving a minibike when he collided with an automobile and sought med-pay coverage under his father's family automobile policy.[13] The policy provided med-pay coverage for Colwell if he were "struck by a Highway vehicle while not Occupying a land motor vehicle."[14] The Arizona Court of Appeals noted that although the term "land motor vehicle" was not defined in the policy, it was not vague or ambiguous (although it "could be more artfully drawn"),[15] and concluded that it had "little difficulty in holding that the common sense definition of the term 'land motor vehicle' would include such a gasoline-powered motorized two-wheeled vehicle."[16]

*Jirousek v. Prudential Insurance Co. of America*[17] yielded a similar result in a different insurance scenario. There, a beneficiary under a life insurance policy sought payment of supplemental benefits after her son died in a motorcycle accident.[18] Supplemental benefits were payable if the decedent had been "struck by a motor vehicle while not himself or herself driving or riding in a motor vehicle."[19] The beneficiary claimed ambiguity in the wording, arguing that a motorcycle was not a motor vehicle under this provision, but the Ohio Supreme Court found no ambiguity: "Each word has its own meaning in every day usage, and the purchaser of insurance ... would understand the limited aspects of ... 'motorcycle,' and the broader meaning of 'motor vehicle.'"[20] It went on to conclude that "the term 'motor vehicle' has a normal meaning in common usage which includes motorcycle."[21]

Following this line of cases and using the ordinary and customary meaning of "motor vehicle," the only reasonable conclusion here is that Joseph Skin was not an **"insured person"** for med-pay coverage under Mrs. Skin's policy because he was occupying a motor vehicle—the Nageaks' ATV—at the time of his accident. The court avoids this logical interpretation and implementation of the pedestrian coverage under provision (c) by examining that provision without considering: (1) the context of the original definition of **"vehicle"**; (2) the opening grant of med-pay coverage for an insured in an accident arising from the use of a "motor vehicle"; or (3) the other three provisions defining an insured for med-pay coverage.[22] The court then finds ambiguity because the term "motor vehicle" contains the word "vehicle" in plain rather than bold typeface, concluding that "the distinction between the terms 'motor vehicle' and 'vehicle' would be difficult for a policyholder to understand."[23]

10. *Id.*

11. *Id.*

12. 123 Ariz. 447, 600 P.2d 751 (App.1979).

13. *Id.* at 751.

14. *Id.* at 752.

15. *Id.*

16. *Id.*

17. 27 Ohio St.2d 62, 271 N.E.2d 866 (1971).

18. *Id.* at 867.

19. *Id.*

20. *Id.* at 868.

21. *Id.* An Ohio appellate court later relied on *Jirousek* to deny med-pay coverage for an injured motorcycle rider under an automobile policy providing med-pay coverage for any family member "struck by a *highway vehicle* while not *occupying* a land motor vehicle," because the motorcycle was a motor vehicle. *Katanik v. State Farm Mut. Auto. Ins. Co.*, 8 Ohio App.3d 76, 455 N.E.2d 1340, 1342–43 (1982) (emphasis in original).

22. This is inconsistent with the rule that ambiguity can exist only when the policy, *taken as a whole*, is reasonably subject to differing interpretations. *Dugan v. Atlanta Cas. Cos.*, 113 P.3d 652, 655 (Alaska 2005).

23. The court notes that the superior court found at least fifty-six instances in the policy where the terms "vehicle" or "motor vehicle" are not bold-faced and create confusion. We noted no confu-

The court notes but does not distinguish *Progressive Express Insurance Co. v. Boyce,*[24] a case involving a Progressive policy and refuting the court's analysis. Like Mrs. Skin's policy, the Boyces' automobile policy contained a general definitions section using boldface type for specially defined words, including **"vehicle."**[25] The Boyces sought uninsured motorist coverage benefits under their policy after they collided with an uninsured vehicle while riding their motorcycle.[26] The Boyces' uninsured motorist coverage contained an exclusion for injuries incurred while using an owned "motor vehicle" other than a "covered vehicle," and there was no dispute that the motorcycle was not a "covered vehicle" under the policy.[27] Just as the court does with respect to Mrs. Skin's policy, the *Boyce* trial court found that "vehicle" as used in the policy was ambiguous because it was used in boldface form in some places and in non-boldface form in the term "motor vehicle." Construing the policy in favor of the Boyces, the trial court found that a motorcycle was not a "motor vehicle" for purposes of the exclusion for uninsured motorist coverage.[28] But the appellate court reversed, finding no ambiguity in the policy's use of the specially defined term **"vehicle"** and holding that, because "motor vehicle" was not defined in the policy and the statutory definition therefore applied, a motorcycle was a "motor vehicle" for purposes of the coverage exclusion.[29] The appellate court in *Boyce* had the correct analysis and directly contradicts the court's decision in this case.

*Towne v. Progressive Insurance Co.,* an unpublished Ohio appellate decision concerning another Progressive policy, is equally instructive.[30] There, holders of an automobile policy sought underinsured motorist coverage under their policy after being involved in an accident while on a motorcycle.[31] The policy contained the same boldface definition of **"vehicle"** as Mrs. Skin's policy,[32] and no one disputed that the motorcycle was not a **"vehicle"** under the policy.[33] The policy contained an exclusion in the underinsured motorist coverage for damages incurred "while operating or occupying a motor vehicle" other than an expressly covered vehicle.[34] Just as the court does with respect to Mrs. Skin's policy and as the *Boyce* trial court did with the Boyces' policy, the *Towne* trial court agreed with the insureds' arguments that (1) because "vehicle" in its non-boldface form was not defined in the policy, the term "motor vehicle" was ambiguous, and (2) the exclusion for uninsured motorist coverage therefore must be construed to mean **"vehicle"** and did not encompass operating or occupying the motorcycle.[35] The Ohio Court of Appeals reversed, stating:

> The 'General Definitions' section of the policy unambiguously states that terms 'appearing in boldface' type will have the supplied meanings. Because the term 'vehicle' does not appear in boldface type in the exclusion, the policy's definition does not apply. Instead, the ordinary meaning of the word applies.[36]

Like the *Boyce* appellate court, the *Towne* appellate court correctly analyzed the policy.

sion or ambiguity in the non-boldface terms "motor vehicle" and "gross vehicle weight" when examining the policy definition of "vehicle" and concluding that an ATV is not a "vehicle." The court similarly noted no confusion or ambiguity in the non-boldface term "motor vehicle" in the grant of med-pay coverage.

24. 821 So.2d 445 (Fla.App.2002).

25. *Id.* at 445–46.

26. *Id.*

27. *Id.* at 445.

28. *Id.* at 446.

29. *Id.*

30. 2005 WL 3588425, 2005–Ohio–7030 (Ohio App.). Under Ohio's rules, unpublished court of appeals opinions may be cited as legal authority and weighted as deemed appropriate by courts. OHIO R. REPORTING OP 4.

31. *Towne,* 2005 WL 3588425 at *1.

32. *Id.* at *2.

33. *Id.* at *2 n. 2.

34. *Id.* at *2.

35. *Id.* at *1.

36. *Id.* at *3.

That analysis precludes med-pay coverage for Joseph Skin under his mother's policy because he was operating a "motor vehicle" at the time of the accident.

The court instead relies on the Washington appellate court decision *Getz v. Progressive Specialty Insurance Co.*,[37] but the court misreads that decision. *Getz* raised the very same question as the *Towne* case, but came to a different result because of differences in the language of the two Progressive policies.

In *Getz* a longshoreman was operating a tractor-like piece of dock equipment known as a "hustler" when he was struck by another vehicle.[38] Getz sought underinsured motorist coverage under his own automobile insurance policy, but his policy had the same exclusion from coverage as in the *Towne* case: coverage was excluded for damages incurred while operating a "motor vehicle" not expressly covered by the policy.[39] But unlike the policy in *Towne*, Getz's policy had a special definition of "motor vehicle" in its underinsured motorist coverage section, a definition that specifically excluded equipment designed or modified for use, and actually used, off-road.[40] It was undisputed that the "hustler" was not a "motor vehicle" under this definition and that the coverage exclusion was facially inapplicable.[41] Progressive nonetheless sought to avoid that result:

> Progressive's sole argument rests on its claim that '[t]hroughout the policy, capital letters are used to denote defined terms.' The term 'motor vehicle' appears in the regular use exception in lower case letters. Progressive therefore argues that 'the ordinary definition of the term, rather than the policy definition, applies.' Progressive provides no authority for this premise. In-

stead, Progressive simply asserts: 'This [practice] makes abundant good sense.'[42] The Washington court correctly rejected Progressive's arguments because, unlike the policy in *Towne*, Getz's policy contained no notice that emphasized terms had special meaning:

> [Progressive's argument] might be [correct] if the policyholder only knew about it. But nothing in the policy signals that the presence or absence of capital letters has any significance at all.
>
> . . . .
>
> So, the question in this case is easily answered as a matter of law. An average person purchasing insurance would reasonably have believed the exclusion inapplicable. Therefore, the exclusion does not apply.[43]

*Getz* does not support the court's decision here. Mrs. Skin's policy plainly states that boldface terms have specifically defined meanings. The term "motor vehicle" is not defined in the policy and therefore does not have a specially defined meaning. Progressive is not seeking to avoid a specifically defined term in its policy and replace it with common meaning and usage. Nor is Progressive seeking to avoid the common meaning and usage of the term "motor vehicle" by pointing to a boldface term in some other portion of the policy. Progressive seeks to apply the common meaning and usage of the undefined term "motor vehicle" consistently throughout its policy.

The court's reliance on the New York appellate decision *In re Progressive Insurance Cos. (Nemitz)*[44] is equally unpersuasive. There, a passenger on an uninsured ATV fell and was injured; she sought uninsured motorist coverage under her own automobile policy.[45] The brief two-page decision in-

37. 106 Wash.App. 184, 22 P.3d 835 (2001).

38. *Id.* at 836.

39. *Id.* at 837.

40. *Id.* The definition is as follows:
"MOTOR VEHICLE" means a land motor vehicle or a utility trailer but does not mean a vehicle:
a. or any equipment designed or modified for USE primarily off public roads, while not on public roads. . . .

41. *Id.*

42. *Id.* at 838.

43. *Id.*

44. 39 A.D.3d 1121, 834 N.Y.S.2d 394 (2007).

45. *Id.* at 395.

cludes a quotation of the policy's general definition of "vehicle," which is similar to that of Mrs. Skin's policy but lacks any boldface type.[46] That definition was said to control except as otherwise defined in the policy,[47] and there was a separate definition of "uninsured motor vehicle" in the uninsured motorist coverage section of the policy, again without any boldface type: "'uninsured motor vehicle' means a motor vehicle that, through its ownership, maintenance or use, results in bodily injury to the insured."[48] Noting without further explanation that the lower court had decided—and the insured did not dispute—that an ATV was not a "motor vehicle" under the general definition, the court decided that the definition of "uninsured motor vehicle" had to be read to conform to the general definition. Thus there was no coverage.[49]

*Nemitz* provides no real support for Joseph Skin to obtain med-pay coverage under Mrs. Skin's policy. Indeed, our own holding about the definition of **"vehicle"** in Mrs. Skin's policy is exactly opposite of the holding in *Nemitz*. While the *Nemitz* court concluded that "vehicle" and "motor vehicle" were synonymous terms, our analysis of Mrs. Skin's liability coverage acknowledged that **"vehicle"** and **"motor vehicle"** had different meanings in the context of the policy.

The court states that Mrs. Skin's policy contains a definition of "uninsured motor vehicle" just like the policy in *Nemitz*. It does not. The policy in *Nemitz* defined the phrase as "a motor vehicle that, through its ownership, maintenance or use, results in bodily injury to the insured."[50] Mrs. Skin's policy defines "uninsured motor vehicle" in significantly more detail:

46. *Id.* at 396 n. 1.

47. *Id.* at 396.

48. *Id.*

49. *Id.*

50. *Id.*

51. Mrs. Skin's uninsured motorist coverage also contains an exclusion for accidents caused by any motorized vehicle designed mainly for off-

*PART III—UNINSURED/UNDERIN-SURED MOTORIST COVERAGE*

. . . .

ADDITIONAL DEFINITIONS

When used in this Part III:

. . . .

5. **"Uninsured/underinsured motor vehicle"** means a land motor vehicle or trailer of any type:

 a. [which is uninsured];

 b. [which is the subject of a denial of coverage or an insolvent insurer];

 c. that is a hit-and-run vehicle whose operator and **owner** cannot be identified and which comes into direct physical contact with:

 i. **you** or a **relative;**

 ii. a vehicle that **you** or a **relative** are **occupying;** or

 iii. a **covered vehicle;**

 provided that the **insured person,** or someone on his or her behalf, reports the **accident** to the police or civil authority within twenty-four (24) hours; or

 d. [which is underinsured].[51]

If similarity of language is significant to the court's reliance on *Nemitz,* this is additional reason to find *Nemitz* unpersuasive. More importantly, this policy provision helps reveal unintended havoc the court's decision may cause in light of its holding that an insured "is entitled to rely . . . on a uniform meaning of 'vehicle' throughout the policy, regardless of typeface."

As with the original definition of **"vehicle,"** an **"uninsured/underinsured motor vehicle"** is a subset of the larger set "land motor vehicle." The subset is further defined by

road use, along with a number of other exclusions:

> *EXCLUSIONS*—**READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.**
> Coverage under this Part III is not provided for **bodily injury** sustained by any person:
> . . . .
> 9. In an **accident** caused by any motorized vehicle or equipment designed mainly for use off public roads, while not on public roads.

the conditions of (a)-(d), including the condition involving a "hit-and-run vehicle." There also is an exclusion for damages resulting from accidents with "motorized vehicles" designed for off-road use. Substituting the special definition of "**vehicle**"[52] for "vehicle" generates confusing circularity about—or perhaps a narrowed definition of—"**underinsured/uninsured vehicle**" ("a land motor **vehicle** or trailer of any type" instead of "a land motor vehicle or trailer of any type"), further limiting that subset ("hit-and-run **vehicle**" instead of "hit-and-run vehicle"), and an eviscerated coverage exclusion (accident "caused by any motorized **vehicle**" instead of "caused by any motorized vehicle"). In short, the court significantly changes the meaning of many provisions of Mrs. Skin's policy, perhaps in as many as fifty-six different places, without giving those provisions any real examination. How those changes actually affect coverage under the policy will be left to future litigation.

With that in mind, a final analysis of the critical elements of the med-pay provision is appropriate:

**INSURING AGREEMENT**

[We will pay medical expenses for injuries sustained by an **insured person,** caused by **accident**]:

3. arising out of the ownership, maintenance or use of a motor vehicle.

. . . .

**ADDITIONAL DEFINITIONS**

When used in this Part II:

1. "**Insured person**" and "**insured persons**" mean:

. . . .

 c. **you** or any **relative** when struck by a motor vehicle or trailer while not **occupying** a motor vehicle; and

In finding coverage for Joseph Skin, the court significantly changed what had been pedestrian coverage under provision (c).

Based on the court's ruling, "motor vehicle" in all three places of this provision should now be uniformly read as "**vehicle**." Although this means that the class of people "not occupying a motor vehicle" has increased from only pedestrians to anyone "not occupying a '**vehicle**,'" such as Joseph Skin, it also means that there has been a decrease in the number of "motor vehicles" covered by the other prong of provision (c): "when struck by a motor vehicle" is now "when struck by a '**vehicle**.'" It is fortuitous for Joseph Skin that while negligently operating the Nageaks' ATV he struck a pickup truck that qualifies as a "**vehicle**," instead of another ATV or some other motor vehicle outside the policy definition of "**vehicle**." But by interpreting Progressive's policy language to find med-pay coverage for Joseph Skin, the court significantly changes the pedestrian coverage Progressive intended to provide.[53]

Because the court finds ambiguity where there is none and unnecessarily changes coverage throughout the policy, I dissent.

---

**52.** The general definition of "vehicle" apparently is modified by the court's holding to state that a "vehicle" is a subset of the category "land motor vehicle" but is within the subset only if it has a "gross **vehicle** weight of 10,000 pounds or less." What this now means is unclear.

**53.** The court suggests that the ambiguity it relies on could not be applied to reduce coverage but only to expand it. It is a dubious proposition that an insured could apply different meanings to the term "motor vehicle" when it is used two times for the same purpose in a single sentence—as in provision (c) of the med-pay coverage.