[No. 46413-2-I. Division One. May 14, 2001.]

HARRY GETZ, ET AL., *Appellants*, v. PROGRESSIVE SPECIALTY INSURANCE COMPANY, *Respondent*.

*Jonathan D. Sweigert* (of *Polito & Sweigert, P.L.L.C.*), for appellants.

*Jerret E. Sale* (of *Bullivant House Bailey*), for respondent.

ELLINGTON, J. — Progressive Specialty Insurance Company issued an auto policy to Harry Getz. The policy contains definitions of several terms, which sometimes appear printed entirely in capital letters. Progressive argues that the policy definitions apply only where the terms

appear in capital letters, and otherwise the dictionary definition applies. Upon this logic, Progressive applied a dictionary definition rather than the policy definition and denied coverage to Harry Getz. We reject this reasoning, and reverse.

## FACTS

Harry Getz is a longshoreman. In the early morning hours of October 5, 1994, he was at work on a dock in Seattle. Getz was operating a "hustler," a diesel-powered tractor with two wheels in front, four wheels in back, and a hydraulic lift. A hustler attaches to and transports shipping containers, and is not designed or licensed for use on public roads.

Getz was operating the hustler when he collided with Robert Perin, who was driving his passenger automobile on the dock without authorization. Getz was severely injured. He settled with Perin for Perin's policy limits of $25,000, and made a claim under his own underinsured motorist (UIM) coverage. Progressive denied the claim on grounds that the hustler was a motor vehicle available to Getz for his regular use.

Getz filed this action to compel arbitration, alleging breach of the insurance contract, bad faith, and violation of the Consumer Protection Act (CPA). Both parties moved for summary judgment. The court granted Progressive's motion,[1] and Getz appeals.

## DISCUSSION

 Interpretation of insurance policy language is a question of law.[2] We interpret policy language as an aver-

---

[1] The parties then entered into a stipulated order dismissing the bad faith and CPA claims.

[2] *N. Pac. Ins. Co. v. Christensen*, 143 Wn.2d 43, 48, 17 P.3d 596 (2001).

age person would understand it.[3] If a policy defines its terms, then those definitions apply.[4] Coverage exclusions "are contrary to the fundamental protective purpose of insurance," and are therefore strictly construed against the insurer; they "will not be extended beyond their clear and unequivocal meaning."[5]

Progressive agreed to pay damages Getz is entitled to recover from the owner of an underinsured motor vehicle. But Progressive denied coverage under the policy's regular use exclusion:[6]

This [UIM] coverage does not apply:

. . . .

5. To BODILY INJURY or PROPERTY DAMAGE sustained by any person while operating or OCCUPYING a *motor vehicle* owned or available for the regular USE by YOU, a RELA-TIVE or any resident of YOUR household, which is not insured under Part I—Liability to Others Section of this policy.[7]

The UIM portion of the policy defines "motor vehicle" as follows:

The "Definitions" section of YOUR policy applies to this Part V, with the exceptions of definitions specified below. Under Part V:

. . . .

2. "MOTOR VEHICLE" means a land motor vehicle or a utility trailer but *does not mean a vehicle*:

a. *or any equipment designed or modified for USE primarily off public roads, while not on public roads*;

---

[3] *Daley v. Allstate Ins. Co.*, 135 Wn.2d 777, 784, 958 P.2d 990 (1998).

[4] *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 576, 964 P.2d 1173 (1998).

[5] *Stuart v. Am. States Ins. Co.*, 134 Wn.2d 814, 818-19, 953 P.2d 462 (1998).

[6] Progressive also argued to the trial court that the definition of "accident" precluded coverage. But Progressive was mistakenly relying on the general policy definition rather than the UIM definition; Progressive does not make this argument on appeal.

[7] Clerk's Papers at 95 (emphasis added).

b. located for USE as a residence or premises.[8]

This is the only definition of "motor vehicle" anywhere in Getz's policy. It is undisputed that under this definition, the hustler is not a motor vehicle.

Progressive contends, however, that the policy definition does not apply. The trial court agreed, apparently on grounds the definition would be inconsistent with Progressive's intent in the regular use exclusion:[9]

> I don't think that the definition of motor vehicle that's in UIM is what is intended in the exclusion, the regular use exclusion, and I am persuaded that this Hustler was a vehicle owned by Mr. Getz' employer and available for his regular use and a vehicle obviously for which he was not paying the premium for which coverage . . . did not extend in this circumstance.
>
> I'll grant the defendant's motion [for summary judgment].[10]

■ The problem with this reasoning is that an insurance policy is not interpreted simply to give effect to what the carrier may have intended to accomplish. Rather, "[a]n insurance policy is construed as a whole, with the policy being given a 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.' "[11]

■ Progressive acknowledges this rule, and does not make an intent argument on appeal. Instead, Progressive's sole argument rests on its claim that "[t]hroughout the

---

[8] Clerk's Papers at 94 (emphasis added).

[9] The general purpose of a regular use exclusion is "to disallow the interchangeable use of other cars which are not covered by the policy," while providing coverage for isolated use without the payment of an additional premium. *Grange Ins. Ass'n v. MacKenzie*, 103 Wn.2d 708, 712, 694 P.2d 1087 (1985).

[10] Report of Proceedings (Mar. 3, 2000) at 18-19. Getz denies the hustler was available for his regular use and testified he had driven it only three times before.

[11] *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 666, 15 P.3d 115 (2000) (quoting *Am. Nat'l Fire Ins. Co. v. B&L Trucking*, 134 Wn.2d 413, 427, 951 P.2d 250 (1998)).

policy, capital letters are used to denote defined terms."[12] The term "motor vehicle" appears in the regular use exception in lowercase letters. Progressive therefore argues that "the ordinary definition of the term, rather than the policy definition, applies."[13] Progressive provides no authority for this premise. Instead, Progressive simply asserts: "This [practice] makes abundant good sense."[14]

This might be so, if the policyholder only knew about it. But nothing in the policy signals that the presence or absence of capital letters has any significance at all. Even a policyholder who wondered, and attempted to discern a pattern, would find none in Getz's policy, wherein several important terms explicitly defined in the policy are printed sometimes in upper case and other times in lower case, and sometimes both cases are used in the same paragraph. The terms "bodily injury" and "accident," for example, appear in lower case where the policy definition is obviously the meaning intended. The terms "accident" and "loss" appear in both upper and lower case in the very sections containing their definitions. The ordinary policyholder cannot be expected to attach significance to the unexplained presence or absence of capital letters.

Suppose Getz had had a near collision on the dock before he encountered Perin, and had checked his policy to determine whether he would have coverage if the other driver were underinsured. A rational reading of the policy would have left him reassured, because the regular use exclusion applies to motor vehicles, and a hustler is not a motor vehicle under the policy definition. So, the question in this case is easily answered as a matter of law. An average person purchasing insurance would reasonably have believed the exclusion inapplicable. Therefore, the exclusion does not apply.

■ Emphasis resulting from size of type may create an

---

[12] Br. of Resp't at 11.

[13] Br. of Resp't at 7.

[14] Br. of Resp't at 13.

ambiguity, particularly where emphasis is sometimes supplied and other times omitted.[15] Even were we to consider the policy merely ambiguous, the result is the same. An exclusion is ambiguous if, on its face, its language is fairly susceptible to two different but reasonable interpretations.[16] The rule that ambiguities are construed against the insurer applies with added force to exclusions that limit coverage.[17] Policy ambiguities, particularly with respect to exclusions, are strictly construed against the insurer.[18]

"The public policy which dictates resolution of ambiguities in favor of the insured rests, it has been said, upon the need to protect against the opportunity which insurance companies have to engage in the sort of obscurantism which conveys one meaning of their contracts to lawyers and another meaning to laymen."[19] Refuge in unexplained print-size variances is exactly the sort of obscurantism policyholders should not be required to anticipate.[20]

Even if the occasional appearance of capital letters supported a reasonable interpretation that application of key policy definitions depended upon capitalization—a proposition with which we do not agree—the contrary interpretation is also reasonable, and the result is merely an ambiguity to be resolved in the policyholder's favor.

Progressive's effort to avoid the consequences of its own definition fails. The court erred in concluding the UIM regular use exception precluded UIM coverage, and we reverse. Getz is entitled to attorney's fees under *Olympic*

---

[15] 2 Lee R. Russ, Couch on Insurance 3d § 22:6 (1995).

[16] *State Farm Mut. Auto. Ins. Co. v. Ruiz*, 134 Wn.2d 713, 722, 952 P.2d 157 (1998).

[17] *Mendoza v. Rivera-Chavez*, 88 Wn. App. 261, 268, 945 P.2d 232 (1997), *aff'd*, 140 Wn.2d 659 (2000).

[18] *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000).

[19] *See* Couch, *supra*, § 22:21.

[20] As our Supreme Court has noted, " 'Punctuation is a most fallible standard by which to interpret a writing.' " *J.R. Simplot, Inc. v. Knight*, 139 Wn.2d 534, 536, 988 P.2d 955 (1999) (holding a hyphen is patently ambiguous when used to separate multiple payees on a negotiable instrument) (quoting *Lessee of Ewing v. Burnet*, 36 U.S. (11 Pet.) 41, 54, 9 L. Ed. 624 (1837)).

*Steamship Co. v. Centennial Insurance Co.*,[21] at trial and on appeal.[22]

Reversed.

WEBSTER and COX, JJ., concur.

---

[21] 117 Wn.2d 37, 811 P.2d 673 (1991).

[22] *Fluke Corp. v. Hartford Accident & Indem. Corp.*, 102 Wn. App. 237, 255, 7 P.3d 825 (2000).