

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 AUG 14 AM 10: 13

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | No. 75705-9-I |
| Respondent, | ) ) | |
| v. | ) ) | |
| NIKOLAS PETERS, | ) ) | |
| Appellant. | ) ) | |
| REED BELT, | ) ) | UNPUBLISHED OPINION |
| Defendant. | ) ) ) | FILED: August 14, 2017 |

VERELLEN, C.J. — Reeve Belt struck Nickolas Peters in the face with a closed fist several times, breaking Peters' jaw. Belt was insured under a State Farm Fire and Casualty Company policy which provided coverage for bodily injury caused by an "occurrence," meaning an "accident." The policy did not contain an express definition for "accident." In opposition to State Farm's motion for summary judgment, Peters submitted a declaration from Belt stating that Belt did not intend to break Peters' jaw.

Under common law, if an insured acts intentionally but claims the result was unintended, the incident is not covered as an accident if the insured knew or should have known the harm was reasonably foreseeable. Because Belt intentionally struck Peters in the face several times and the harm of a broken jaw was reasonably

foreseeable, there are no issues of material fact for a jury to decide. Thus, the Snohomish County Superior Court properly granted summary judgment in favor of State Farm.

Therefore, we affirm.

## FACTS

Reeve Belt made a fist and intentionally struck Nikolas Peters in the right side of his jaw, fracturing Peters' jaw in three places. Belt pleaded guilty to fourth degree assault[1] in Snohomish County District Court.

In the police report, Belt admitted he got into an argument with Peters and "hit[ ] him in the face several times."[2] And in his guilty plea, he admitted that he "did intentionally assault" Peters.[3]

Peters sued Belt in Snohomish County Superior Court. Belt was insured through his parents' State Farm homeowner's policy. The policy included "Coverage L - Personal Liability" insurance:

> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:
>
> 1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice.[4]

---

[1] Clerk's Papers (CP) at 90 ("The elements of the crime(s) are: That the defendant, in Snohomish County, Washington, on or about the 11th day of February, 2013, did intentionally assault another person, to-wit: Nickolas Peters.").

[2] CP at 99.

[3] CP at 94.

[4] CP at 137 (bold font in original).

2

The policy included a "Definitions" section, which contained a definition for "occurrence":

[A]n *accident*, including exposure to conditions, which results in:

a. **bodily injury**; or

b. **property damage**;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.[5]

That section does not include a definition of "accident."

Exclusions for Coverage L extend to:

a. **bodily injury** or **property damage**:

(1) which is either expected or intended by the **insured**; or

(2) which is the result of willful and malicious acts of the **insured**.[6]

State Farm defended Belt under a reservation of rights and filed an action seeking a judgment declaring it owed no duty to defend or indemnify Belt. Peters submitted Belt's declaration admitting he intentionally struck Peters in the face with his hand but "did not expect or intend to injure" Peters.[7] The court granted State Farm's motion for summary judgment.

Peters appeals.

---

[5] CP at 124 (emphasis added) (bold font in original).

[6] CP at 138 (bold font in original).

[7] CP at 28.

## ANALYSIS

Peters argues the trial court erred in granting summary judgment in favor of State Farm. Peters contends the policy includes a definition for "accident" and, even if it does not, the common law definition presented a question of fact regarding Belt's conduct. We disagree.

We review a summary judgment order de novo.[8] Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law.[9] An "'adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts* showing that there is a genuine issue for trial.'"[10]

Insurance policies are contracts and are construed as such.[11] We interpret "insurance contracts as an average insurance purchaser would understand them."[12] If an insurance policy defines its terms, those definitions apply, but undefined terms "must be given their 'plain, ordinary, and popular' meaning."[13] "The court must

---

[8] Blick v. State, 182 Wn. App. 24, 29, 328 P.3d 952 (2014).

[9] CR 56(c).

[10] Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 795, 64 P.3d 22 (2003) (quoting CR 56(e)).

[11] Washington Pub. Util. Dists. Utils. Sys. v. Public Util. Dist. No. 1 of Clallam County, 112 Wn.2d 1, 10, 771 P.2d 701 (1989).

[12] Kish v. Ins. Co. of North America, 125 Wn.2d 164, 170, 883 P.2d 308 (1994).

[13] Kitsap County v. Allstate Ins. Co., 136 Wn.2d 567, 576, 964 P.2d 1173 (1998) (quoting Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wn.2d 869, 877, 784 P.2d 507 (1990)).

4

enforce the contract as written if the language is clear and unambiguous."[14] A clause is ambiguous only "'when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.'"[15] If the language is ambiguous, "the court must attempt to discern and enforce the contract as the parties intended."[16] "Coverage exclusions 'are contrary to the fundamental protective purpose of insurance,' and are therefore strictly construed against the insurer; they 'will not be extended beyond their clear and unequivocal meaning.'"[17]

We engage in a two-step process to determine whether coverage exists: "The insured must show the loss falls within the scope of the policy's insured losses. To avoid coverage, the insurer must then show the loss is excluded by specific policy language."[18]

Peters argues we should infer a definition of "accident" from the exclusionary provisions in the policy. But Peters does not cite compelling authority that, without an express definition, words used in an exclusionary clause provide an implied definition.

---

[14] Pub. Util. Dist. No. 1 of Clallam County, 112 Wn.2d at 10.

[15] Quadrant Corp. v. American States Ins. Co., 154 Wn.2d 165, 171, 110 P.3d 733 (2005) (quoting Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 15 P.3d 115 (2000)).

[16] Pub. Util. Dist. No. 1 of Clallam Cnty., 112 Wn.2d at 11.

[17] Getz v. Progressive Specialty Ins. Co., 106 Wn. App. 184, 187, 22 P.3d 835 (2001) (quoting Stuart v. American States Ins. Co., 134 Wn.2d 814, 818-19, 953 P.2d 462 (1998)).

[18] McDonald v. State Farm Fire & Cas. Co., 119 Wn.2d 724, 731, 837 P.2d 1000 (1992).

Peters cites Getz v. Progressive Specialty Insurance Company, where the insurer admitted "motor vehicle" was defined in the policy but argued capital letters in its policy denoted defined terms, and because "motor vehicle" appeared in lower case, the ordinary definition controlled over the policy definition.[19] The court disagreed, reasoning there was no language in the policy signaling any significance of capital or lower case letters,[20] and, even if the court were to find an ambiguity, "[r]efuge in unexplained print-size variances is exactly the sort of obscurantism policyholders should not be required to anticipate."[21] Peters cites Woo v. Fireman's Fund Insurance Company, where the insured's policy provided coverage for injury caused by an "occurrence," meaning "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy expressly defined "accident" as a "fortuitous circumstance, event or happening that takes place and is neither expected nor intended from the standpoint of the insured."[22]

But unlike Getz or Woo, State Farm does not concede that "accident" is defined in Belt's policy. And rather than relying on "unexplained print-size variances," State Farm points to the common law definition for "accident," which would exclude Belt's conduct from coverage under the policy. We decline to infer a definition of "accident" from the policy exclusions.

---

[19] 106 Wn. App. 184, 188-89, 22 P.3d 835 (2001).

[20] Getz, 106 Wn. App. at 189 ("But nothing in the policy signals that the presence or absence of capital letters has any significance at all.").

[21] Id. at 190.

[22] 161 Wn.2d 43, 62-63, 164 P.3d 454 (2007).

Here, the policy does not expressly define "accident,"[23] and the policy's exclusionary provisions do not mention the term. Therefore, we look to the common law definition.[24]

The common law definition of "accident" for liability policies lacking any express definition has evolved over the past several decades.[25]

The contemporary common law definition of "accident" for homeowner's insurance is succinctly articulated in State Farm Fire & Casualty Company v. Ham & Rye, L.L.C.:

> Thus, where the insured acts intentionally but claims that the result was unintended, the incident is not an accident if the insured knew or should have known facts from which a prudent person would have concluded that the harm was reasonably foreseeable.[26]

Similar iterations of an objective "reasonably foreseeable" standard are present in the contemporary cases.

In Detweiler v. J.C. Penney Casualty Insurance Company, the insured jumped onto the back of his truck when another man started to drive it away.[27] When the

---

[23] 161 Wn.2d 43, 62-63, 164 P.3d 454 (2007) (

[24] Grange Ins. Ass'n. v. Roberts, 179 Wn. App. 739, 755-56, 320 P.3d 77 (2013) ("In contrast to the policy in Woo, the term "accident" is not defined in Grange's policy. We thus look to the common law definition.").

[25] See Unigard Mut. Ins. Co. v. Spokane Sch. Dist. No. 81, 20 Wn. App. 261, 579 P.2d 1015 (1978); Safeco Ins. Co. of America v. Dotts, 38 Wn. App. 382, 685 P.2d 632 (1984); Detweiler v. J.C. Penney Cas. Ins. Co., 110 Wn.2d 99, 751 P.2d 282 (1988); Safeco Ins. Co. of America v. Butler, 118 Wn.2d 383, 823 P.2d 499 (1992); Nationwide Mut. Ins. Co. v. Hayles, Inc., 136 Wn. App. 531, 150 P.3d 589 (2007); State Farm Fire & Cas. Co. v. Ham & Rye, L.L.C., 142 Wn. App. 6, 174 P.3d 1175 (2007).

[26] 142 Wn. App. 6, 17, 174 P.3d 1175 (2007).

[27] 110 Wn.2d 99, 101, 751 P.2d 282 (1988).

insured fell off the truck, he fired several shots at the left rear wheel and tire intending to stop the truck, but the bullets fragmented when they hit the truck, injuring the insured.[28] Our Supreme Court held that even though the insured intended to shoot at the truck, given the confusion of the incident, including the rapidly moving truck and shooter, reasonable minds could disagree as to whether he should have *expected or foreseen* the injuries.[29]

In Safeco Insurance Company of America v. Butler, the insured fired a gun at a truck carrying young men he believed had destroyed his mailbox.[30] A bullet ricocheted, injuring one of them.[31] The court concluded the ricochet was foreseeable because *no reasonable person could conclude* that the insured, who had firearms training, was unaware of the potential of ricochet, or that a ricochet might hit an occupant of the truck.[32]

In Nationwide Mutual Insurance Company v. Hayles, the court concluded the insured's intentional act of turning on an irrigation system was not evidence he knew or *should have known* that turning on the water would rot the onion crop being irrigated.[33]

Here, the record does not reveal any factual issue for a jury. We disagree with Peters' suggestion that State Farm must show Belt acted with *specific knowledge*

---

[28] Id.

[29] Id. at 108.

[30] 118 Wn.2d 383, 386, 823 P.2d 499 (1992).

[31] Id. at 401.

[32] Id.

[33] 136 Wn. App. 531, 539, 150 P.3d 589 (2007).

that the injuries to Peters would result. Belt admitted, "I intentionally struck Nickolas Peters in the face with my hand."[34] Belt claims he "did not expect or intend to injure" Peters,[35] but the "unintended" result and Belt's purported subjective intent are inconsequential in this setting. A prudent person would have concluded that a broken jaw was a *reasonably foreseeable result* of punching someone in the jaw. There is no support for the proposition that a mere subjective belief that there would be no injury, or subjective lack of knowledge or appreciation of consequences, results in coverage of intentional conduct as an "accident."

The only authority Peters offers regarding subjective intent is Queen City Farms, Inc. v. The Central National Insurance Company of Omaha.[36] In that toxic tort case involving a comprehensive general liability policy, the court held subjective expectations could create a genuine issue of material fact. But the policy at issue here is different. Notably, the Queen City Farms court expressly distinguished toxic tort coverage from the contemporary "accident" cases.[37]

We reject the argument that subjective beliefs of an insured determine whether intentional conduct is covered as an accident in this setting.

At oral argument, Peters argued State Farm had inadequately developed the record. But, as the moving party, State Farm provided the police report and the admissions by Belt that he intended to hit Peters, formed a fist, and hit him several

---

[34] CP at 28.

[35] Id.

[36] 126 Wn.2d 50, 882 P.2d 703 (1994).

[37] Id. at 68.

times.  A plaintiff opposing summary judgment may not rely on pleadings or speculative declarations.  The trial court granted Peters' motion to continue.  Peters had the opportunity to further develop the record in opposition of summary judgment.  Peters filed a short declaration admitting Belt struck Peters in the face with his hand and that he did not expect or intend to injure.  But the declaration did not contradict or dispute the facts in the police report.  The record adequately supported State Farm's motion for summary judgment.  Peters had the burden of demonstrating a genuine issue of material fact.

Belt acted intentionally.  Under the objective reasonable, prudent person standard articulated in our contemporary cases, the question here is whether a reasonable person should reasonably anticipate or foresee that hitting someone in the face with a fist several times could break someone's jaw.  We conclude a reasonable person should have known the potential for injury.

We need not address Peters' collateral estoppel argument.

Therefore, we affirm.

WE CONCUR:

10